**Randolf G. OTT, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

**Civ. A. No. 94–4235–DES.**

United States District Court, D. Kansas.

Sept. 29, 1995.

**1.** Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. Pub.L. No. 103–296. Pursuant to Fed.R.Civ.P. 25(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action.

Kelly C. Brown, Kenneth M. Carpenter, Carpenter Chartered, Topeka, KS, for plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

### I. INTRODUCTION

This matter is before the court on plaintiff's motion for summary judgment (Doc. 10).[2]

### II. PROCEDURAL BACKGROUND

On March 25, 1992, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Plaintiff alleged that he became unable to work because of his disabling condition on December 31, 1988. The Social Security Administration ("SSA") denied plaintiff's claim on May 27, 1992, stating that plaintiff's post-traumatic stress disorder ("PTSD") and depression did not limit his ability to work. Plaintiff filed a request for reconsideration on July 28, 1992. SSA denied plaintiff's request on September 23, 1992, finding that plaintiff's mental problems were not disabling prior to plaintiff's date late insured of December 31, 1989.

On January 18, 1993, plaintiff requested a hearing by an administrative law judge ("ALJ"). Mr. Ott's hearing was set for September 7, 1993. Plaintiff's counsel, by letter dated August 11, 1993, requested that the ALJ have a medical advisor present at Mr. Ott's hearing. The ALJ denied counsel's request, and the plaintiff's hearing was held on September 7, 1993, without the presence of a medical advisor.

In a decision dated December 23, 1993, the ALJ determined that plaintiff is not entitled to a period of disability or disability insurance benefits, because plaintiff did not become disabled until on or about February 1, 1992, after his date last insured. On February 16, 1994, plaintiff filed a request for review of the ALJ's decision; plaintiff's request was denied on October 5, 1994. The ALJ's decision thus stands as the final decision of the Social Security Commissioner.

### III. FACTUAL BACKGROUND

Mr. Ott was born on June 2, 1946. Plaintiff is a high school graduate who served in the United States Army from 1965 to 1969, completing two tours of duty in Vietnam. After discharge, plaintiff worked as a carpet layer for approximately 16 years.

Plaintiff has been divorced three times, and currently has no permanent address. He receives a Veterans Administration ("VA") disability pension of $1,750 per month.

Other facts pertinent to plaintiff's medical and vocational history are recited in the discussion below.

### IV. COMMISSIONER'S DECISION

In its December 23, 1993, decision, the ALJ made the following findings:

1. That the claimant met the disability insured status requirements of the Act on December 31, 1988, the date the claimant stated he became unable to

2. The parties have followed D.Kan.Rule 503, which provides for the filing of "an appropriate dispositive motion and memorandum" for a social security appeal. The Tenth Circuit, in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 n. 29, 1580 (10th Cir.1994), disapproved of the motion practice followed in this district pursuant to D.Kan.Rule 503 and explicitly prohibited the continued use of this procedure. The court is in the process of amending D.Kan. Rule 503 to comply with the holding in *Olenhouse* and to conform with the provisions of Fed.R.App.P. 15.

work, and continued to meet them through December 31, 1989, but not thereafter.

2. That the claimant has not engaged in substantial gainful activity since December 31, 1988.

3. The medical evidence establishes that the claimant has severe post traumatic stress disorder, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 on or before December 31, 1989.

4. That the claimant's testimony regarding the severity of his condition on and before December 31, 1989, is not fully credible for reasons set forth in detail elsewhere in this decision.

5. That the claimant had the residual functional capacity to perform work related activities except for work involving close interpersonal contact with others (20 CFR 404.1545).

6. That the claimant's past relevant work as carpet layer did not require the performance of work related activities precluded by the above limitation(s) (20 CFR 404.1565).

7. That the claimant's impairment did not prevent the claimant from performing his past relevant work.

8. That the claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (20 CFR 404.1520(e)).

## V. DISCUSSION

■ This action is brought under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration. The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision, and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497–98 (10th Cir.1992). The court is bound to uphold the Commissioner's findings "if they are supported by 'substantial evidence' and if there exists no other 'good cause' to remand." *McDaniel v. Bowen,* 800 F.2d 1026, 1029 (11th Cir.1986).

Plaintiff argues that the Social Security Commission erred as a matter of law when it failed to follow Social Security Ruling 83–20, "Titles II and XVI: Onset of Disability," 1983–1991 Soc.Sec.Rep.Serv. 49, 1983 WL 31249 ("SSR 83–20"). Plaintiff also contends that the final decision of the Commissioner denying plaintiff disability benefits is not supported by substantial evidence.

■ The purpose of SSR 83–20 is to "state the policy and describe the relevant evidence to be considered when establishing the onset date of disability." *Id.* at *1. The onset date is the first date an individual is disabled. *Id.* The factors the ALJ should consider in determining the onset date include the claimant's allegations, the claimant's work history, and the relevant medical evidence. *Id.* The individual's allegations and date of work stoppage are significant, however, only if they are consistent with the medical evidence. *Id.*

The starting point in determining the onset date of a disability of nontraumatic origin is the claimant's statement as to when disability began. *Id.* at *2. The date alleged by the individual should be used to establish the onset date if the alleged date is consistent with all the evidence available. *Id.* at *3. Here, Mr. Ott claims that the onset date of his disability was December 31, 1988. Also significant is the date the claimant's impairment caused him to stop work. *Id.* at *2. In this case, the ALJ found that Mr. Ott had not engaged in substantial gainful activity after December 31, 1988.

The third and primary factor in the determination of disability onset is medical evidence. *Id.* The ALJ should review all relevant medical reports to ascertain the date of onset. *Id.* However, with slowly progressive impairments, such as PTSD, it is sometimes impossible to obtain medical evidence establishing the precise date the impairment became disabling. *Id.* When precise evi-

dence is not available, the ALJ must infer the onset date from medical and other evidence. *Id.* at *2–3. The ALJ's judgment as to how long an impairment has existed at a disabling level must have a legitimate medical basis. *Id.* at *3. For that reason, the ALJ "should call on the services of a medical advisor when onset must be inferred." *Id.*

 Therefore, to decide whether the ALJ erred in denying Mr. Ott's motion to have a medical advisor present at his September 7, 1993, hearing, we must determine whether the evidence regarding the onset date of plaintiff's disability is ambiguous. *Easthouse v. Shalala,* 877 F.Supp. 561, 565 (D.Kan. 1995). If the medical evidence regarding the onset date is ambiguous, the ALJ must infer the onset date after consulting a medical advisor. *Id.* at 565; *see also Spellman v. Shalala,* 1 F.3d 357 (5th Cir.1993) (in cases involving slowly progressive impairments in which the medical evidence regarding onset is ambiguous, the Secretary must infer the onset date with the assistance of a medical advisor); *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991) (when medical evidence is not definite and inferences must be made, the ALJ must utilize a medical advisor).

In his December 23, 1993, decision, the ALJ stated that the evidence showed that the claimant became disabled on or about February 1, 1992, and that it was therefore unnecessary to infer the onset of disability. The court finds, however, that the evidence as to onset date is ambiguous, and that the ALJ should therefore have consulted a medical advisor before rendering his decision.

Plaintiff's disorder may have first manifested itself as early as the 1960s. In a letter to plaintiff dated January 19, 1993, plaintiff's treating physician at the Colmery–O'Neil Medical Center in Topeka, Kansas, discussed the onset of plaintiff's symptoms of PTSD. Dr. Carol Padilla wrote that while Mr. Ott's symptoms had progressively worsened over time, she believed that the symptoms dated back to the end of plaintiff's tour in Vietnam in 1968.

Of course, the date symptoms initially appear is not determinative of when an individual's impairment becomes disabling. On the other hand, the fact that plaintiff was not treated for his symptoms until long after the symptoms first appeared does not preclude the possibility that plaintiff became disabled before he received treatment. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989).

The next evidence of plaintiff's mental state appears in medical history compiled by the VA in 1990. Hospital records reveal that plaintiff underwent two psychiatric hospitalizations in the 1970s.

The only relevant evidence concerning plaintiff's disability during the 1980s is found in plaintiff's work history. Mr. Ott's earnings record discloses that plaintiff's employment has been inconsistent since 1984:

| Year | Earnings |
|---|---|
| 1983– | $17,682.17 |
| 1984– | 85.36 |
| 1985– | .00 |
| 1986– | .00 |
| 1987– | 199.11 |
| 1988– | 16,862.70 |
| 1989– | 257.60 |
| 1990– | 22.80 |
| 1991– | 745.00 |
| 1992– | .00 |

The ALJ found that plaintiff has not engaged in substantial gainful activity since December 31, 1988. At that time, Mr. Ott began leading a transient lifestyle.

On approximately January 11, 1990, Mr. Ott appeared in court in Muskogee County, Oklahoma, on burglary charges. An outburst in court resulted in plaintiff's commitment to the Eastern State Hospital in Vinita, Oklahoma. Upon admission, plaintiff was assigned a Global Assessment of Functioning ("GAF") scale score of 61. According to the *Diagnostic and Statistical Manual of Mental Disorders,* a GAF of 61 indicates that the patient has some difficulty in social, occupational, or school functioning. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 12 (3d ed. 1987). Upon the plaintiff's discharge on February 12, 1990, a staff physician found that the plaintiff's "past year GAF" was 80, which indicates only a slight impairment in social, occupational, or school functioning.

*Id.* However, in a "Social History and Assessment" prepared on January 19, 1990, a psychiatric social worker determined that Mr. Ott's "highest GAF in past year" was 43. A patient with a GAF of 43 is described as having "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g, few friends, unable to keep a job)." *Id.*

The fact that the medical examinations Mr. Ott received at the Eastern State Hospital did not occur until after plaintiff's date last insured of December 31, 1989, does not preclude a finding that plaintiff became disabled prior to December 31, 1989. "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." SSR 83–20, 1983 WL 31249, at *3. Of course, as stated above, such an inference can only be made in consultation with a medical advisor.

The records from Mr. Ott's January 1990, hospital stay are significant in that they are the medical records closest in time to plaintiff's alleged onset of disability, December 31, 1988, and plaintiff's date last insured of December 31, 1989. Unfortunately, as the plaintiff's GAF scores indicate, the evidence from the plaintiff's January 1990 stay is ambiguous, and does not establish whether Mr. Ott's impairment became disabling in 1989. This, of course, is the critical fact to be determined, as Mr. Ott is not entitled to receive Social Security disability benefits unless he became disabled on or before December 31, 1989.

Plaintiff was first diagnosed with PTSD while an inpatient at the Veterans Hospital in Leavenworth, Kansas, in June 1990. The critical date in determining onset of disability, however, is the date on which the claimant's impairment becomes disabling, not the date on which he is first diagnosed. *Easthouse,* 877 F.Supp. at 565.

Since his discharge from the Leavenworth Veterans Hospital in July 1990, plaintiff has undergone numerous hospitalizations at veterans hospitals in Leavenworth, Topeka, Phoenix, Arizona, and Temple, Texas. The VA initially assigned plaintiff a disability rating of 20 percent. Some time prior to June 5, 1991, plaintiff's disability rating was increased to 30 percent. On August 13, 1992, the Veterans Administration declared plaintiff to be 100 percent disabled effective February 1, 1992.

Upon review of plaintiff's VA disability determinations, the ALJ concluded that Mr. Ott was not disabled in 1990 and 1991, and that the plaintiff did not become disabled under the Social Security Act until on or about February 1, 1992. While the ALJ is not bound by disability determinations of other agencies, such assessments are evidence that can properly be considered by the ALJ. 20 C.F.R. § 404.1512(b)(5).

The weight to be given to the VA effective date of February 1, 1992, however, should be decided in light of 38 C.F.R. § 3.400. The regulation provides that "*the effective date* of [a VA] evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim ... *will be the date of receipt of the claim or the date entitlement arose, whichever is the later.*" *Id.* (emphasis added). Plaintiff alleges that he did not formally apply to the VA for total disability benefits until February 1, 1992, and that the VA thus could not set an effective date for plaintiff's compensation prior to that date.

Furthermore, "in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases consideration of vocational factors can contribute to the determination of when the disability began." SSR 83–20, 1983 WL 31249, at *2. Applying this rule, the court in *Blankenship v. Bowen* held that the ALJ had erred in fixing the onset of disability as the date on which the claimant was first diagnosed as 100 percent disabled. 874 F.2d at 1122. The court found that the Secretary's determination that the claimant was not disabled within the meaning of the Social Security Act until the date of the claimant's examination was not substantiated by the record.

*Id.* at 1124. By choosing the claimant's examination date as the onset of disability, "the ALJ ... erroneously require[d] the impairments to reach Listing severity before finding appellant disabled, and erroneously fail[ed] to draw any inferences from the medical and other evidence as to whether appellant was able to engage in substantial gainful activity prior to the expiration of his insured status." *Id.* at 1122. The court reversed the Secretary's decision and remanded so that a medical advisor could be used in determining the disability onset date. *Id.* at 1124.

The facts of *Blankenship* are similar to those of the instant case. The claimant in *Blankenship* alleged a disability onset date of February 23, 1979. *Id.* at 1117. The claimant's last date insured was June 30, 1985. *Id.* Because the ALJ concluded that the claimant was not disabled until November 13, 1985, the date on which the claimant was first diagnosed as 100 percent disabled, the claimant was not entitled to disability insurance benefits. *Id.* at 1117, 1122. Like the plaintiff in this case, the claimant in *Blankenship* had been examined several times prior to the first determination of full disability, but had never been assessed as more than 30 percent disabled. *Id.* at 1118–19. Nevertheless, the court found that the Secretary's selection of November 13, 1985, as the disability onset date was not substantiated by the record, because the ALJ had not given proper consideration to vocational factors and other evidence. *Id.* at 1122, 1124.

SSR 83–20 provides that "the established onset date ... can never be inconsistent with the medical evidence of record." 1983 WL 31249, at *3. The medical evidence in this case, however, is not clear. The record is devoid of any direct medical evidence pertaining to the severity of plaintiff's impairment during 1989, the critical time period. The ALJ apparently relied, at least in part, on VA disability determinations in concluding that plaintiff was not 100 percent disabled before February 1, 1992. As explained above, however, the VA's setting of February 1, 1992, as the effective date of plaintiff's compensation does not necessarily mean that plaintiff did not become disabled before that date. Furthermore, the VA determinations of 20 and 30 percent disability in 1990 and 1991 are evidence of when disability occurred, but are not conclusive. Other medical evidence demonstrates the possibility of a disability onset date prior to December 31, 1989: 1) plaintiff's treating physician, Dr. Padilla, dates plaintiff's symptoms of PTSD back to the 1960s; 2) plaintiff underwent at least two psychiatric hospitalizations during the 1970s; and 3) in January 1990, plaintiff was assigned a GAF score "for the past year" which indicated "serious impairment in ... occupational ... functioning." We therefore conclude that the evidence regarding the onset date of plaintiff's disability is ambiguous.

Plaintiff alleges that he has been disabled since December 31, 1988, and the ALJ found that plaintiff has not engaged in substantial gainful activity since December 31, 1988. Therefore, the first two criteria to be examined in determining disability onset, the applicant's allegations and work history, point to an onset date prior to December 31, 1989. The medical evidence, however, is inconclusive. When the evidence regarding the onset date of mental impairment is ambiguous, "the ALJ should determine the date based on an informed inference.... Such an inference is not possible without the assistance of a medical expert." *Morgan v. Sullivan,* 945 F.2d 1079, 1082–83 (9th Cir.1991).

Because the ALJ did not utilize a medical expert to infer plaintiff's disability onset date, this case must be remanded. *See Easthouse,* 877 F.Supp. at 561; *Dye v. Bowen,* 1989 WL 159379, at *5 (D.Kan.1989). The ALJ shall determine the date of onset with the assistance of a medical advisor.

**IT IS BY THE COURT THEREFORE ORDERED that this matter is REVERSED AND REMANDED** for determination by the Administrative Law Judge, with the assistance of a medical advisor, of the date of onset of plaintiff's disability.